Bruce RANKIN, by and through Patricia RANKIN and John Rankin as Co-Conservators of the property of Bruce Rankin, and Rankin Sign Co., Inc., Appellant,

v.

GENERALI—U.S. BRANCH, Appellee.

Court of Appeals of Tennessee,
Eastern Section, at Nashville.

Oct. 9, 1998.

Permission to Appeal Denied by
Supreme Court March 8, 1999.

Lawrence P. Leibowitz and Melissa A. Ashburn, Leibowitz & Cohen, Knoxville, for Appellant.

Archie R. Carpenter, Toby R. Carpenter and Christopher D. Heagerty, Carpenter & O'Connor, Knoxville, for Appellee.

## *OPINION*

FRANKS, J.

In this action to recover for a loss under plaintiff's policy of insurance, the Trial Court determined that the policy provided no coverage due to certain exclusions in the policy.

In October 1995, defendant issued an insurance policy to plaintiff Rankin Sign Company, Inc. The policy provided coverage for a building owned by plaintiffs. Because of unknown persons parking heavy machinery next to the front of the building, the front basement wall rotated inward, and this rotation caused the same wall to twist outward in the upper office area. The damage was caused by heavy pressure exerted on the parking area adjacent to the building from the heavy vehicles parked in the parking lot.

Plaintiff's claim was denied and this action was filed, seeking a determination that the damages caused were covered under the policy. The Trial Court, after trial, determined that the building did not "collapse" within the meaning of the policy, and that the policy did not cover the damage.

Plaintiff argues the Trial Court erred in its conclusion. The policy states in relevant part:

D. Additional Coverage—Collapse

We will pay for loss or damage caused by or resulting from risk of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

4. Weight of people or personal property;

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

Courts construe insurance policies "according to their plain, ordinary, and popular sense". *Purdy v. Tenn. Farmers Mut. Ins. Co.* ., 586 S.W.2d 128, 129 (Tenn.App.1979). If the policy language is ambiguous, it "must be construed in favor of the insured and against the insurer". *Id.* at 130. A contract is ambiguous only if it is of uncertain meaning and may fairly be understood in more ways than one. *Rogers v. First Tennessee Bank Nat. Ass'n.*, 738 S.W.2d 635 (Tenn.App. 1987). (Citations omitted).

The Trial Court determined the damage to the building was not a "collapse" within the meaning of the policy. The Trial Court found that "for the loss of the wall to be covered, there must be in ordinary language a complete falling down of the wall into a mass or disorganized condition".

No reported Tennessee cases precisely defining "collapse" have been called to our attention. In *Owens v. Tennessee Farmers Mut. Ins. Co.*, 1989 WL 61239 (Tenn.App. 1989), this Court cited cases which defined collapse as a complete breaking down of a structure. Courts in other jurisdictions have reached differing results on the meaning of the term "collapse". *See* Annotation, *What constitutes "collapse" of a building within coverage of property insurance policy*, 71 A.L.R.3d 1072 (1976). The most relevant of the cases are those where the policy at issue contained exceptions for settling, cracking, shrinking, bulging or expansion.

Within this line of cases, courts have reached differing results. Some courts have

held that "collapse" is an unambiguous term "which denotes a falling in, loss of shape, or reduction to flattened form or rubble". *Id.* at 1097. *See Williams v. State Farm Fire & Cas. Co.*, 514 S.W.2d 856 (Mo.Ct.App.1974); *Krug v. Miller's Mut. Ins. Assoc.*, 209 Kan. 111, 495 P.2d 949 (1972); *Graffeo v. United States Fidelity & Guar. Co.*, 20 A.D.2d 643, 246 N.Y.S.2d 258 (N.Y.App.Div.1964); *Employers Mut. Casualty Co. v. Nelson*, 361 S.W.2d 704 (Tex.1962). Under the majority view, however, "the term 'collapse' does not require complete destruction or falling in of the building...." *Indiana Ins. Co. v. Liaskos*, 297 Ill.App.3d 569, 231 Ill.Dec. 844, 697 N.E.2d 398, 404 (1998), *rehearing denied.* Thus, "the clear modern trend is to hold that collapse coverage provisions ... which define collapse as not including cracking and settling—provide coverage if there is substantial impairment of the structural integrity of the building or any part of a building". *American Concept Ins. Co. v. Jones*, 935 F.Supp. 1220, 1226 (D.Utah 1996). *See also Island Breakers v. Highlands Underwriters Ins. Co.*, 665 So.2d 1084 (Fla.Dist.Ct.App.1995); *Thomasson v. Grain Dealers Mut. Ins. Co.*, 103 N.C.App. 475, 405 S.E.2d 808 (1991); *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 532 A.2d 1297 (1987); *Ercolani v. Excelsior Ins. Co.*, 830 F.2d 31 (3rd Cir. 1987); *Nationwide Mut. Fire Ins. Co. v. Tomlin*, 181 Ga.App. 413, 352 S.E.2d 612 (1986); *Sherman v. Safeco Ins. Co.*, 716 P.2d 475 (Colo.Ct.App.1986); *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 709 P.2d 649 (1985); *Government Employees Ins. Co. v. DeJames*, 256 Md. 717, 261 A.2d 747 (1970). In reaching their decisions, many courts have held that "collapse" is an ambiguous term. *See DeJames*, 261 A.2d at 751–52 (holding that collapse is ambiguous because the word has a more restrictive meaning when used as a verb as when used as a noun).

In *American Concept Ins. Co. v. Jones*, 935 F.Supp. 1220 (D.Utah 1996), the Court summarized several policies underlying the majority view: (1) if the insurer had intended to define collapse as meaning reduced to a

flattened form or rubble, it could have done so in the contract; (2) although the policy stated that collapse did not include settling, cracking, shrinking, bulging or expansion, it was difficult to imagine a collapse that would not include some of these attributes; thus, the term could be interpreted as not including mere settling or cracking, but that which results in "substantial impairment of the home's structural integrity"; (3) some dictionary definitions of "collapse" suggest that the term means a substantial impairment of the structure's integrity; (4) to require a building to fall down before allowing coverage would be unreasonable in light of the insured's duty to mitigate damages and would be economically unsound. *Id.* at 1227–1228.

This analysis is persuasive. Although *Owens,* apparently adopted the more restrictive view of collapse, the modern trend favors a more expansive approach. In light of the compelling policy reasons underlying the majority view, we will follow the majority's rationale in this case and reverse the Trial Judge's determination that this exclusion prevents coverage for this loss. The Trial Court noted that one of the experts stated that the wall could remain standing for years. The Court also found, however, that the wall "constituted an extreme hazard". We therefore conclude that this policy exclusion does not control.

▌ The Trial Court also held that the "earth movement" exception contained in the policy also excluded plaintiff's loss. The policy lists the following relevant exclusion:

B.  EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

B. Earth Movement

(1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting damage.

No Tennessee cases have been cited which specifically address an "earth movement" clause such as the one in the policy before us. In *Lee v. Nationwide Mut. Ins.,* 1988 WL 39567, this Court defined "earth movement" as "any change of place, position or posture of the soil". In that case, however, the damage was caused when a pipe broke, causing liquid sewage to flow beneath the plaintiff's home. The policy at issue in *Lee* had a special exception for ground water that the Court found applicable, although "earth movement" apparently caused some damage, other damage also resulted from the flow of ground water. Thus, the ground water exclusion was significant to resolution of that case.

Other jurisdictions have reached different results on the meaning of "earth movement" exceptions. In *Winters v. Charter Oak Fire Ins. Co.,* 4 F.Supp.2d 1288 (D.N.M.1998), the Court interpreted an "earth movement" clause identical to the one in this case in all material respects. The Court noted that in the policy, "the term 'earth movement' is subject to the qualifier, 'such as an earthquake, mine subsidence, landslide, or earth sinking, rising or shifting.'" *Id.* at 1293. The Court said, "In the context of the rest of these examples, it is apparent that the policy is intended to exclude only 'occasional major disasters' ... rather than 'human action ... occurring within the immediate vicinity of the damage."' *Id. (Citing Wyatt v. Northwestern Mut. Ins. Co. Of Seattle,* 304 F.Supp. 781 (D.Minn.1969)).

In reaching its decision, the *Winters* Court relied upon the rule of *"esjudem generis".* In this context, the rule of construction requires that "general words are not construed in their widest extent, but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *Id.* (Citation omitted). Our courts have also consistently applied this rule. *See Central Drug Store v. Adams,* 184 Tenn. 541, 201 S.W.2d 682 (1947).

We find the *Winters* rationale persuasive, and conclude that the earth movement exception does not apply in this case. Accordingly, we reverse the judgment of the Trial Court and remand to the Trial Court for the entry of a judgment for plaintiff's damages for repairing the building.

The cost of the appeal is assessed to defendant.

HOUSTON M. GODDARD, P.J., DON T. McMURRAY, J., concur.