# STATE OF MICHIGAN

# COURT OF APPEALS

---

HOME-OWNERS INSURANCE COMPANY,

        Plaintiff/Counter-Defendant-
        Appellee,

v

DOMINIC F. ANDRIACCHI,

        Defendant/Counter-Plaintiff-
        Appellant.

FOR PUBLICATION
June 8, 2017
9:05 a.m.

No. 331260; 332457; 333695
Marquette Circuit Court
LC No. 14-052954-CZ

---

HOME-OWNERS INSURANCE COMPANY,

        Plaintiff/Counter-Defendant-
        Appellant,

v

DOMINIC F. ANDRIACCHI,

        Defendant/Counter-Plaintiff-
        Appellee.

No. 332640
Marquette Circuit Court
LC No. 14-052954-CZ

---

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

MURRAY, J.

In Docket No. 331260, defendant/counter-plaintiff Dominic F. Andriacchi appeals as of right the circuit court order granting plaintiff/counter-defendant Home-Owners Insurance Company's motion for summary disposition under MCR 2.116(C)(10) in this declaratory judgment action regarding whether Home-Owners had a duty to provide insurance coverage for Andriacchi under a policy that excluded coverage for loss caused by any "earth movement." In Docket No. 332457, Andriacchi appeals as of right a subsequent order granting fees and costs to Home-Owners under MCR 2.625, while in Docket No. 332640, Home-Owners appeals as of right, and Andraicchi appeals by delayed leave granted, that same order that also denied Andriacchi's motion to disqualify the trial judge and determined it to be frivolous, but declined

-1-

to award Home-Owners sanctions under MCR 2.114 and MCL 600.2591. We affirm in part, vacate in part, and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

Home-Owners provided a "businessowners policy" of insurance to Andriacchi with effective dates of June 1, 2013, through June 1, 2014. The policy covered risks of physical loss unless the loss was "[e]xcluded in Section B., Exclusions" or "[l]imited in Paragraph A.4., Limitations." On March 1, 2014, Andriacchi sought coverage under the policy for damages to his building that occurred after a major street repair had taken place. A licensed professional engineer retained by Home-Owners determined that "[e]arth movement beneath the interior concrete floor slab has resulted in the observed structural damage at the subject law offices building." The preliminary engineering report stated:

> This earth movement resulted in the subsidence of supporting soils and interior concrete floor slab. The perimeter footings appear stable and undisturbed.
>
> * * *
>
> Supporting soils usually do not move and subside under older structures; any subsidence usually appears shortly after construction. However, a major infrastructure/street project that required long periods of dewatering and construction vibration was just completed per the insured. The interaction of original site soil preparation, fill quality, placement, and compaction under the interior concrete slab with recent dewatering and construction activity combined to create the recent earth movement event.

The claim was denied pursuant to an exclusion to coverage in Section B for "[a]ny earth movement." Home-Owners thereafter sought a declaration that it owed no duty to cover Andriacchi's losses because the losses were excluded under the policy.

Home-Owners eventually filed a motion for summary disposition under MCR 2.116(C)(8), (C)(9), and (C)(10), arguing that the language of the exclusion barring coverage for losses resulting from "any earth movement" is clear and unambiguous and fell squarely within the acknowledged operative facts of Andriacchi's loss. Home-Owners sought summary disposition on its declaratory judgment claim as well as on Andriacchi's counterclaims, and requested costs and attorney fees under MCR 2.114.

In response, Andriacchi maintained that the earth movement exclusion in the policy applied only to natural earth movement, not to "man-made" earth movement. He contended that the words "any earth movement" must be read in context with those that surround them and, therefore, the exclusion was limited in application to natural phenomena; in the alternative, Andriacchi maintained that the exclusion was subject to more than one reasonable interpretation and was, therefore, ambiguous. Andriacchi sought summary disposition under MCR 2.116(I)(2), and requested damages in the amount of $92,100 to repair his damaged property, statutory interest, prejudgment interest, and actual attorney fees and costs.

-2-

The trial court held a hearing on the motion and, following the parties' arguments, concluded that "[a]ny earth movement means any earth movement. And I don't need Latin rules of statutory construction to turn that into anything else other than what it says." The trial court thereafter entered an order granting Home-Owners's motion for summary disposition on the basis "that [Home-Owners] has no duty to provide coverage for [Andriacchi's] losses" and dismissing Andriacchi's counterclaim.

Andriacchi thereafter filed a motion to disqualify the trial judge "for ex parte communication and bias" as a result of the court's reading of Home-Owners's reply brief that he had apparently not received before the hearing, and purported bias against him. The trial court denied the motion to disqualify, stating:

> I'm denying the motion for a disqualification. I'm finding that the communication—so called communication or reply brief, which was accompanied by a proof of service, and not—Mr. Andriacchi is not objecting to the proceeding, and gave a nine- or ten-minute argument without benefit of the reply brief, and I'm not sure the reply brief would have helped him because it didn't change anything about what the plaintiff was arguing. So I'm finding that it was not an ex parte communication.
>
> . . . And the court rule has a 14-day window there for good reason. Number one, I don't think I've shown any bias or prejudice. Number two, as Mr. Smith pointed out, it's disingenuous to wait until you get an adverse ruling on a substantive motion, and then to raise all of these prejudicial allegations, going back to when the case was filed. But I allowed Mr. Andriacchi to make a record on all of those perceived—he calls it scolding or evidence of prejudice. I think he's made a sufficient record.
>
> But to the extent that they go back more than 14 days from the filing of his motion, they're denied for that reason. They're also denied because I don't believe they're prejudicial. I was trying to provide some guidance.

The State Court Administrator assigned Judge Charles Goodman to review the motion for disqualification. After a hearing, Judge Goodman issued a detailed order affirming the denial of the motion to disqualify the trial judge, finding that "[t]he record before this Court shows no evidence of favoritism, prejudice, bias or improper conduct on the part of" the trial judge.

After Andriacchi filed his claim of appeal, Home-Owners filed a motion to tax attorney fees and costs under MCR 2.114, MCR 2.625, and MCL 600.2591, in the amount of $18,694.43. Home-Owners requested costs and fees under MCR 2.114 and MCL 600.2591, for Andriacchi having filed a frivolous defense, counterclaim, and motion to disqualify, and costs under MCR 2.625, for prevailing on the motion for summary disposition. In response, Andriacchi argued that his position was not frivolous due to the lack of Michigan precedent, and that Home-Owners was entitled at most to $20 in costs for the summary disposition motion, and disputed the remainder of the costs requested.

At a subsequent hearing, Home-Owners conceded that it was not entitled to a $150 charge for statutory costs for proceeding to trial, as there was no trial. The trial court then ruled:

> I've never awarded costs—actual attorney fees. I . . . came very close in this case, but I am not going to award them. I . . . am, frankly, uncomfortable awarding fees to a party defending my disqualification.

> And with respect to attorney fees on the underlying claim, I did grant a motion for summary disposition. I believe that the law is clear, but that Mr. Andriacchi was making an effort to establish Michigan precedent to the contrary on that . . . policy language.

> * * *

> I'm . . . finding that the statutory costs [under MCR 2.625], Mr. Smith, of course, can be imposed.

The trial judge clarified that Andriacchi's motion to disqualify was frivolous pursuant to MCR 2.114 and MCL 600.2591, and then entered an order and judgment (1) denying Home-Owners's motion "for violation of MCR 2.114 and MCL 600.2591 regarding the defense of the coverage issue" for reasons stated on the record, and (2) finding the defense motion to disqualify the judge to be frivolous pursuant to MCR 2.114 and MCL 600.2591, but declining to award costs and attorney fees. A second order and judgment was entered granting Home-Owners's motion to tax costs pursuant to MCR 2.625, in the amount of $821.76.[1]

## II. ANALYSIS

### A. DOES THE EXCLUSION APPLY ONLY TO NATURAL EARTH MOVEMENTS?

For the reasons explained below, we hold that the trial court properly granted Home-Owners's motion for summary disposition because the earth movement exclusion plainly excluded coverage for loss caused by "any" earth movement, and there is no material factual dispute that Andriacchi's loss was caused by earth movement.

Because the trial court considered documentary evidence in granting the motion for summary disposition, we review the trial court's order as one granted pursuant to MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). Summary disposition is appropriate under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." In conducting the de novo review, this Court construes the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in a light most

---

[1] This Court granted defendant's motion for stay pending resolution of the appeal in an order entered on May 2, 2016.

favorable to the non-moving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009).

Home-Owners does not dispute that it insured Andriacchi's property with an "all-risk" policy. "Notwithstanding the presence of an 'all-risks' provision in an insurance policy, the loss will not be covered if it comes within any specific exclusion contained in the policy." 10A Couch, Insurance, 3d, § 148.68, p 164. Here, the policy provides for various exclusions, of which one, the earth movement exclusion, is the focus of the parties. The exclusion provides, in pertinent part:

> B. EXCLUSIONS
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> &ast; &ast; &ast;
>
> b. Earth Movement.
>
> (1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide or earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

The interpretation of this particular insurance contract clause appears to be a question of first impression in this state. Andriacchi takes the position that the exclusion is ambiguous and must be construed to apply only when the earth movement occurs due to natural, as opposed to man-made, causes. Home-Owners takes the opposite view, contending that the exclusion is unambiguous and covers earth movement, whether natural or man-made.

"[I]n reviewing an insurance policy dispute [courts] must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction," the predominant rule being that "an insurance contract must be enforced in accordance with its terms." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353-354; 596 NW2d 190 (1999). Courts will "look to the plain language of the insurance policy in determining the scope of coverage . . . ." *Busch v Holmes*, 256 Mich App 4, 9; 662 NW2d 64 (2003). Although a court strictly construes exclusions in favor of an insured, *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 567; 489 NW2d 431 (1992), "[c]lear and specific exclusions must be given effect," and "coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims," *Holmes*, 256 Mich App at 9. "Respect for the freedom to contract entails that we enforce only those obligations actually assented to by the parties." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 63; 664 NW2d 776 (2003). A court cannot rewrite a contract if its terms are expressly stated. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

Again, the earth movement exclusion refers to "any earth movement." The word "any" is not defined in the insurance policy, "but is commonly understood to be all-encompassing, meaning 'every' or 'all,' and can be 'used to indicate one selected without restriction' or 'to

indicate a maximum or whole.' " *Ionia Ed Ass'n v Ionia Pub Sch*, 311 Mich App 479, 486; 875 NW2d 756 (2015), quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, "any earth movement" means "every" or "all" movement of the earth without restriction or distinction as to the type (i.e., natural or man-made).

Relying on the doctrine of *ejusdem generis*, Andriacchi argues that the term "earth movement" is constricted by the words of limitation, "such as." Because the exclusion only identifies natural events—"earthquake, landslide or earth sinking, rising or shifting"— Andriacchi argues that the term "earth movement" is limited to naturally occurring events. Reliance on the doctrine is misplaced. Under the *ejusdem generis* doctrine, "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Black's Law Dictionary* (10th ed).[2] But as the trial court recognized, that doctrine (nor, for that matter, any other canon of statutory interpretation) does not apply where the language of the contract is clear, see, e.g., *Utica State Savings Bank v Village of Oak Park*, 279 Mich 568, 573; 273 NW 271 (1937), as is the case here. Further, the phrase "such as" conveys that the cited examples are not all-inclusive or restrictive in nature, and thus does not serve to narrow the types of earth movement excluded under the policy. Moreover, the cited examples of earth movement are not only caused by natural phenomena. For example, landslides can occur naturally or be caused by man, as can the "sinking, rising or shifting" of the earth.

Andriacchi relies on a Michigan Institute of Continuing Legal Education (ICLE) treatise and foreign authority in support of his argument that the exclusion is capable of two or more reasonable constructions and is, therefore, ambiguous. He cites *Michigan Insurance Law and Practice*, which provides as follows:

> ***Earth movement***. The earth movement exclusion applies only to naturally occurring phenomena such as earthquake; landslide; mine subsidence; earth sinking, rising, or shifting; and volcanic eruption or explosion. The exclusion does not apply to earth movement caused by non-natural means. [Fabian, *Michigan Insurance Law and Practice*, ch 10, § 10.89, p 407.]

The authors, however, provide no authority in support of this statement. But they do appropriately recognize that, in insurance cases, what *is* dispositive is the actual language used in the policy, which can vary between insurers:

> This chapter is a basic summary of property insurance based on the ISO [Insurance Services Office, Inc.] forms, which are the most common forms used by insurance companies. The practitioner should be aware that many insurers, if not most, have modified many of the ISO forms and issue insurance policies that contain different language and requirements than the ISO forms. Therefore, the

---

[2] This canon also applies to statutes like this one, where the general word or phrase is followed by specific examples. See *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718; 629 NW2d 915 (2001).

authors urge all readers to thoroughly review each policy of insurance before reaching any conclusions about the duties of the parties or the coverages afforded and to not assume that the policy of insurance provides the same coverages and duties as the ISO forms. [*Id.* at § 10.1, p 347.]

Of the foreign authority[3] cited by Andriacchi in support of his argument that the earth movement exclusion is ambiguous, only three cases involve an earth movement exclusion that contains language similar to the instant exclusion. *Rankin v Generali-US Branch*, 986 SW2d 237, 237 (Tenn App, 1998), involved a virtually identical exclusion. There, the front basement wall of a building partially collapsed and was damaged as the result of heavy machinery parked near the building. *Id.* The owner of the building sought coverage under his insurance policy, but the insurance company denied coverage in part under the earth movement exclusion, *id.*, which excluded coverage for " '[a]ny earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting,' " *id.* at 239. The court reviewed the exclusion and determined that because the exclusion included the terms "earthquake," "mine subsidence," and "landslide," all naturally occurring events, it is " 'apparent that the policy is intended to exclude only "occasional major disasters" . . . rather than "human action . . . occurring within the immediate vicinity of the damage." ' " *Id.*, quoting *Winters v Charter Oak Fire Ins Co*, 4 F Supp 2d 1288, 1293 (D NM, 1988), quoting *Wyatt v Northwestern Mut Ins Co of Seattle*, 304 F Supp 781, 783 (D Minn, 1969). The court ultimately held that the earth movement exclusion did not preclude coverage. *Id.* at 240.

In *Winters*, another often-cited case on this issue, a waterline broke in the insured's clubhouse, causing subsequent shifting of the soil beneath the building, leading to structural damage. *Winters*, 4 F Supp 2d at 1290. The insurer contended that the damage fell within the exclusion for " '[a]ny earth movement (other than sinkhole collapse), such as an earthquake, mine subsidence, landslide, or earth sinking, rising or shifting.' " *Id.* at 1292. The *Winters* court concluded, based on the construction of the term "earth movement" in *United Nuclear Corp v Allendale Mut Ins Co*, 103 NM 480; 709 P2d 649 (1985), that "earth movement" includes only naturally occurring phenomena. *Winters*, 4 F Supp 2d at 1291. The policy provision at issue in *United Nuclear*, however, was not precisely the same as the earth movement exclusion in *Winters*. In *United Nuclear*, 103 NM at 482, the policy provided coverage for "[c]ollapse of buildings . . . , except that there shall be no liability for loss or damage caused by or resulting from flood, earthquake, landslide, *subsidence or any other earth movement*." The term "any other earth movement" was a general term following a list of specific terms. The *United Nuclear*

---

[3] Andriacchi also cites *Powell v Liberty Mut Fire Ins Co*, 127 Nev 156, 159 (2011) (policy excluded loss due to "Earth movement"); *Fayad v Clarendon Nat'l Ins Co*, 899 So2d 1082, 1084 (Fla, 2005) (policy excluded "Earth movement"); *Murray v State Farm Fire & Cas Co*, 203 W Va 477, 484 (1998) (first policy excluded loss caused by "Earth movement, including, but not limited to . . ." ; second policy excluded loss due to "Earth movement" that "includes but is not limited to . . ."); *Peters Twp Sch Dist v Hartford Accident & Indemnity Co*, 833 F2d 32 (CA 3, 1987) (policy excluded loss due to "earth movement, including but not limited to . . .").

court applied the doctrine of *ejusdem generis* to the term "earth movement" and construed it to cover only naturally occurring phenomena. *Id.* at 483-484.

In *Wyatt*, 304 F Supp at 782, the insurance company denied coverage under a homeowners' policy for damage to a house caused by excavation work on an adjacent property. The insurance company denied coverage under the earth movement exclusion "for loss caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, landslide, mud flow, earth sinking, rising or shifting; unless loss by fire or explosion ensues, and this Company shall then be liable only for such ensuing loss . . . ." *Id.*

The homeowners argued that this provision was meant to exclude damage from "natural causes and natural phenomena" and that "where the proximate and efficient cause of damage definitely is the action of a third-party, this exclusion does not apply even though the actions of such third-party may incidentally have caused some 'earth movement.' " *Id.* at 782-783. They reasoned that the purpose of the exclusion was to relieve insurers from unpredictable "major disasters" that cause widespread damage. *Id.* at 783.

In resolving the issue, the *Wyatt* court looked to other provisions in the policy that it said gave force to the view that the exclusion was not intended to cover " 'earth movement' occurr[ing] under a single dwelling, allegedly due to human action of third persons in the immediate vicinity of the damage." *Id.* The "other" provisions excluded losses from "floods, tidal waves, a back up of water below the surface, changes in temperature and changes in the law," and the court noted that "[a]ll of these are phenomena likely to affect great numbers of people when they occur." *Id.*

At no time did the *Wyatt* court discuss the specific language in the policy and whether the words were ambiguous. Instead, the court announced its "interpretation" wholly apart from the express policy terms, which it then said created ambiguity in the exclusionary language. *Id.* at 783-784. However, the court did not conclude from the types of earth movement set forth in the exclusion that it was limited to "natural phenomena." Rather, the court reached a much more narrow holding, i.e., that the exclusion did not cover what occurred in the case where the policy covered the acts of others:

> Certainly not all earth movements, or at least those where some human action causes such are included in the exclusion. If this interpretation creates an ambiguity in the language then it is necessary to decide what earth movements were intended to be covered. The class cited in the exclusionary clause is therefore held, if not limited to natural phenomena, at least not to exclude coverage in the case at bar.
>
> There is no dispute that the policy here involved covers acts of others than the owner. [*Id.* at 783.]

Home-Owners has, of course, found authority interpreting earth movement exclusions using language similar to the exclusion at hand, but reaching results more palatable to its view. In *Stewart v Preferred Fire Ins Co*, 206 Kan 247; 477 P2d 966 (1970), the plaintiff's house sunk into a pre-existing cavern or shaft area of a mining operation after soil under and around the

foundation gave way. *Id*. at 248. The insurance policy excluded " 'loss caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, landslide, mud flow, earth sinking, rising or shifting[.]' " *Id*. at 248. In challenging the denial of the claim based on the earth movement exclusion, the plaintiff argued that the language was ambiguous and urged the court to apply the *ejusdem generis* doctrine to find that "the enumerated events, earthquake, landslide and earth sinking are all events which have their origin in nature, are 'acts of God . . . .' " *Id*. at 249.

The court declined to apply the doctrine because it found the policy was not ambiguous:

Before the rule of ejusdem generis can be applied the clause must be ambiguous. The term 'earth movement' taken in its plain, ordinary and popular sense means any movement of earth whether it be up, down or sideways. The words 'earthquake, landslide, mud flow' and the term 'earth sinking, rising or shifting' all refer to vertical or horizontal movements of earth or soil, wet and dry. We fail to see how the exclusionary clause can be considered ambiguous. The words used may not reasonably be understood to have two or more possible meanings. [*Id*. at 249-250 (citations omitted).]

The *Stewart* court also observed that, even if it were to apply the *ejusdem generis* doctrine, this still would not lead to the narrow construction suggested by the plaintiff. It stated: "[W]e cannot agree that landslides, mud flows, earth sinking, rising or shifting are natural phenomena or 'acts of God'. . . . For the most part the events enumerated in the exclusionary clause originate from the negligence or carelessness of man in failing to follow proper conservation practices." *Id*. at 250. Thus, "[w]hen earthquakes, which fall within the legal definition of an 'act of God', are included along with landslides, mud flows and earth sinking there is no apparent basis for the restriction urged by appellants under the rule of ejusdem generis." *Id*.

In *Century Park East Homeowners Ass'n v Northbrook Prop & Cas Ins Co*, 21 F Appx 708, 708 (CA 9, 2001), the plaintiff brought an action against the insurer to recover for damages to a building caused by sinking of a slab. Like the policy in the present case, the insurance policy contained an exclusion for "any earth movement" and a list of examples prefaced by the phrase "such as." *Id*. at 709. The court concluded that the plain language of the "unqualified phrase 'any earth movement' includes all types of movement, both sudden and sluggish movement, and both natural and artificial movement." *Id*. The court also held that "[t]he additional 'such as' language does not serve to limit that." *Id*. The court recognized that a policy provision that is capable of two or more constructions, both of which are reasonable, will be deemed ambiguous, but that "that certainly does not mean that a provision is ambiguous simply because a court, somewhere, has deemed it so." *Id*.

The cases cited by the parties contain, for the most part, reasonable interpretations of those varying earth movement exclusions. Indeed, it is not unreasonable to read some of these exclusions as limited to naturally occurring events. But we cannot read the exclusion at issue in such a limited manner. For, as already discussed, the exclusion here applies to "any" earth movement, revealing that the parties clearly intended that coverage would not apply for any earth

movement, be it the result of natural phenomena or the upshot of human activities. The trial court's conclusion that the exclusion applied to this damage was correct.

Further supporting this conclusion is the lead-in clause. As noted earlier, that clause states that any loss or damage caused by an earth movement "is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." This lead-in phrase, in conjunction with the broad earth movement provision, reinforces the notion that the exclusion applies to any earth movement, because the exclusion applies even if it occurs in part because of a concurrent cause or event. See, e.g., *One Place Condo LLC v Traveler's Prop Cas Co*, unpublished opinion of the United States District for the Northern District of Illinois, issued October 6, 2014 (No. 11C2520); *Gillin v Universal Underwriters Ins Co*, unpublished opinion of the United States District Court for the Eastern District of Pennsylvania, issued March 4, 2011 (No. 09-5855). And there is certainly no limitation on what can cause the concurrent cause or event. Hence, as these and other courts have recognized, the plain language of the lead-in clause makes clear that the exclusion applies regardless of whether it occurs because of a concurrent event or cause, including a manmade occurrence.

## B. COSTS AND FEES

This Court reviews for an abuse of discretion the trial court's ruling on a motion to tax costs under MCR 2.625. *Guerrero v Smith*, 280 Mich App 647, 670; 761 NW2d 723 (2008). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006). However, whether a particular expense is taxable as a cost is a question of law. *Guerrero*, 280 Mich App at 670. This Court reviews de novo questions about the correct interpretation and application of statutes and court rules. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009); *Hess v Cannon Twp*, 265 Mich App 582, 589; 696 NW2d 742 (2005).

"Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." MCR 2.625(A)(1). "The power to tax costs is purely statutory, and the prevailing party cannot recover such expenses absent statutory authority." *Guerrero*, 280 Mich App at 670.

As the prevailing party, Home-Owners sought to tax costs for the following expenses: (1) $20 for proceedings before trial under MCL 600.2441(2)(a), (2) $20 for the summary disposition motion under MCL 600.2441(2)(b), (3) $150 for trial under MCL 600.2441(2)(c), (4) $35.20 for a court reporter fee, (5) a $516.56 expert witness fee under MCL 600.2164, and (6) $80 for various motion fees under MCL 600.2441. At the hearing, Home-Owners acknowledged that it could not tax the $150 trial fee. The trial court ruled that Home-Owners could tax "statutory costs" under MCR 2.625(A), but did not expressly designate the items for which it allowed costs. It did, however, address Andriacchi's objections to the itemized invoice appended to Home-Owners's motion for attorney fees and costs, which included the same costs as the January 18, 2016 taxation of costs form with the exception of the removal of the $150 "trial" fee under MCL 600.2441(2)(c), and the inclusion of a $150 filing fee under MCL 600.2441(2)(c).

Andriacchi asserts that the trial court erred by failing to apply MCR 2.625(C) to limit Home-Owners's costs to "$0 or, at most, $100" because damages were not awarded. MCR 2.625(C), entitled, "Costs in Certain Trivial Actions," provides that, "[i]n an action brought for damages in contract or tort in which the plaintiff recovers less than $100 (unless the recovery is reduced below $100 by a counterclaim), the plaintiff may recover costs no greater than the amount of damages." Here, Home-Owners's action was not one for "damages," it was for a declaratory judgment that it owed no duty to cover defendant's loss under the insurance policy. Andriacchi cites no authority for the argument that MCR 2.625(C) is applicable to an action seeking only a declaratory judgment. Because Home-Owners's action is not one for damages, MCR 2.625(C) does not serve to limit its recoverable costs.

Andriacchi also argues that Home-Owners was not entitled to expert witness fees because MCL 600.2164 bars the assessment of expert witness fees as a cost when the expert does not testify. MCL 600.2164(1) provides, in relevant part, "No expert witness shall be paid, or receive as compensation in any given case for his services as such, a sum in excess of the ordinary witness fees provided by law, *unless the court before whom such witness is to appear, or has appeared, awards a larger sum, which sum may be taxed as a part of the taxable costs in the case.*" (Emphasis added.)

Both the language of the rule and caselaw are against Andriacchi's position. In *Herrera v Levine,* 176 Mich App 350, 357-358; 439 NW2d 378 (1989), this Court concluded: "The language 'is to appear' in § 2164 applies to the situation at bar in which the case was dismissed before defendant had a chance to call its proposed expert witnesses at trial. Furthermore, the trial court was empowered in its discretion to authorize expert witness fees which included preparation fees." Hence, a party may recover expert fees under MCL 600.2164 where a case is dismissed before that expert can testify at trial.

Andriacchi further contends that the expert (an engineer) was hired and his report was completed 21 days before the lawsuit was filed and, therefore, that the report is "analogous to a 'critical assessment of the opposing party's position' which is 'not regarded as [a] properly compensable expert witness fee.' " The record reveals that the engineer was retained to inspect Andriacchi's building and determine the cause of the damages to the building after Andriacchi initially objected to Home-Owners's determination that the damages were caused by earth movement. Home-Owners included with its motion for summary disposition the affidavit of the engineer, in which he opined regarding the cause of the damages. The costs sought by Home-Owners in connection with the expert's time were necessary for the expert to develop his opinion regarding the cause of the damages. Indeed, Andriacchi relied upon the expert's finding that the damages were caused by earth movement in opposing Home-Owners's motion for summary disposition. Costs for expert witness fees were properly awarded.

We do agree with Andriacchi that the trial court abused its discretion when it awarded Home-Owners $35.20 as taxable costs for court reporter fees incurred in ordering a hearing transcript, because the trial court could not award costs incurred in seeking the transcript for purposes of appeal. MCL 600.2543(2) provides, "Only if the transcript is desired for the purpose of moving for a new trial or preparing a record for appeal shall the amount of reporters' or recorders' fees paid for the transcript be recovered as a part of the taxable costs of the prevailing party in the motion, in the court of appeals or the supreme court." In *Van Elslander v Thomas*

*Sebold & Assoc, Inc*, 297 Mich App 204, 223; 823 NW2d 843 (2012), this Court held that "[a]lthough the cost of trial transcripts constitutes a taxable cost in an appeal, it is inappropriate to include the cost of transcripts prepared for an appeal as costs recoverable by the prevailing party in a civil action." Thus, the trial court lacked authority to award the court reporter fees, and this cost should be vacated from the costs awarded to Home-Owners. On remand, the trial court should enter an amended judgment excluding this cost from the costs awarded.

Next, Andriacchi contends that the trial court abused its discretion by awarding $80 for motion fees. Under MCL 600.2529(1)(e) and (2), motion fees are taxable as costs. The trial court did not specifically address the requested motion fees at the March 14, 2016 hearing, but it did express that Home-Owners was entitled to the "statutory fees." It appears undisputed that Home-Owners actually paid $80 in motion fees.

According to Andriacchi, the $20 fee for the motion to set aside a default and the $20 fee for the motion to compel production of documents were not recoverable because Home-Owners did not request costs in their respective motions.[4] Andriacchi also asserts that the $20 fee for the motion for an order to show cause for his failure to turn over the settlement agreement pursuant to the court's June 25, 2015 order was not recoverable because "there was no basis for the motion." However, Andriacchi has provided no authority in support of these arguments, and the language of the statute does not provide him with relief. The trial court had authority to tax motion fees under MCL 600.2529.[5]

## C. SHOULD SANCTIONS HAVE BEEN AWARDED FOR THE MOTION TO DISQUALIFY?

This Court reviews a trial court's decision regarding sanctions based on frivolous pleadings or claims for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003).

---

[4] Andriacchi also asserts that he was entitled to taxable costs incurred in reliance on the default under MCR 2.603 and MCR 2.625. However, that issue is not the subject of the order from which this appeal is taken.

[5] Andriacchi argues that the $20 motion fee for Home-Owners's motion for summary disposition was awarded twice "as part of the $80 motion fee and also a motion resulting in dismissal (or judgment)." However, the lower court register of actions reveals that Home-Owners paid a $20 motion fee for its motion for summary disposition on July 27, 2015, and subsequently filed a $20 motion fee on September 14, 2015, for entry of an order on the court's ruling granting Home-Owners's motion for summary disposition. The $20 fee for the motion for summary disposition was not awarded twice.

The trial court found that Andriacchi's motion to disqualify the trial judge was frivolous under both MCR 2.114 and MCL 600.2591. Home-Owners argues that sanctions are mandatory under MCL 600.2591(1) and MCR 2.114(E), if the trial court finds a violation of the statute or court rule.[6] Home-Owners is correct. Sanctions are mandatory if a court determines that a document was signed in violation of MCR 2.114(E). Andriacchi argues that MCR 2.114(E) is not mandatory, but the court rule clearly provides that

> [i]f a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, *shall impose upon the person who signed it* . . . an appropriate sanction, which may include . . . reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. . . . [Emphasis added.]

Thus, the trial court abused its discretion by refusing to award sanctions. See *Cvengros v Farm Bureau Ins*, 216 Mich App 261, 268; 548 NW2d 698 (1996).[7]

## D. WERE THE FINDINGS SUFFICIENT?

Andriacchi argues that the trial court failed to make any findings that would facilitate appellate review of the trial court's frivolousness determination and, therefore, this Court should vacate that part of the April 11, 2016 order holding that the defense motion to disqualify was frivolous.[8]

The lower court record reveals that Home-Owners sought to tax fees and costs under MCR 2.114 and MCR 2.625 "for a frivolous defense," arguing that "this is a frivolous defense where no further explanation is needed." Home-Owners subsequently filed a "supplemental brief for MCL 600.2591 sanctions" for Andriacchi's assertion of a frivolous defense and

---

[6] Sanctions for the filing of a frivolous motion to disqualify must be evaluated under MCR 2.114, not under MCL 600.2591, because MCL 600.2591 provides for sanctions related to a frivolous *civil action or defense*. Thus, only MCR 2.114 is addressed here despite the fact that the trial court's order refers to both MCR 2.114 and MCL 600.2591.

[7] Andriacchi cites to MCL 600.2591(1), and argues that "[o]nly 'the court that conducts the civil action' has the authority to issue sanctions under MCL 600.2591." He appears to be asserting that the motion for disqualification was not part of the "civil action" after he sought review of the trial court's denial of the motion for disqualification. However, he has failed to sufficiently brief the argument that a chief judge's review of a trial judge's denial of a request for disqualification under MCR 2.003(C)(3) (and now under MCR 2.003(D)(3)), is the equivalent of an appeal for which the trial court has no jurisdiction to award costs. This argument is abandoned. See MCR 7.212(C)(5); *In re ASF*, 311 Mich App 420, 440; 876 NW2d 253 (2015).

[8] The trial court did not award sanctions for filing a frivolous motion and, therefore, there is no award of sanctions to review. However, because Home-Owners is challenging the trial court's refusal to award sanctions after finding that the motion to disqualify was frivolous, Andriacchi's argument that the motion was not frivolous becomes relevant.

frivolous attempt to disqualify the trial judge. At the associated hearing, the trial court stated, "I'm finding that the motion to disqualify me for ex parte communication was frivolous, but I am uncomfortable in imposing actual attorney fees to a firm that was basically defending my position." Andriacchi thereafter filed objections to Home-Owners's proposed order, and a hearing was held. The trial court stated:

> I just want to clarify one point. In your first proposed order, you indicated that . . . I found the motion to disqualify frivolous, but refused to award costs. I believe—and if I didn't say it, what I meant to say is that I don't think it was in my wheelhouse to make that call. When Judge Goodman had the case, I think he should have been asked to (inaudible) issue.

> So with that said, I am finding that the two proposed orders prompted by the defendant's [sic] bill of costs are proper, and the statutory costs that are involved, as far as the expert witness, he was clearly retained, and was going to testify in this case if it went any further. So (inaudible) case in my further discretion to award expert fees, I am awarding his costs and signing the orders as presented by Mr. Smith.

The trial court entered two separate orders, one making a finding of frivolousness and the other declining to award costs.

This Court has explained the issuance of sanctions under MCR 2.114(E),[9] as follows:

> Whenever an attorney or party signs a motion, that person's signature constitutes "certification" that he or she has "read the document" and, "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," and that the motion was not made for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." MCR 2.114(D). If a party brings a motion that has been signed in violation of MCR 2.114(D), the trial court must "impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . ." MCR 2.114(E). The trial court may not assess punitive damages, but may order the person who signed it or a represented party to pay "the other party or parties the amount of the reasonable expenses incurred because of the filing . . . ." MCR 2.114(E). [*Kaeb v Kaeb*, 309 Mich App 556, 565; 873 NW2d 319 (2015).]

The trial court denied Home-Owners's request for sanctions after it concluded, with no analysis, that "the motion to disqualify me for ex parte communication was frivolous." The trial

---

[9] Again, the issue is being analyzed under MCR 2.114(E) alone. MCL 600.2591 is not applicable to a frivolous motion because a motion does not involve a claim or defense in a civil action.

court's subsequent written order gave no indication as to why it found that the motion was frivolous, though the reasons why it would make that conclusion are fairly apparent from the record. After all, the basis for the recusal motion was that the judge read a reply brief filed with the court that had a proof of service, but that defense counsel may not have received. This clearly is not a plausible theory for recusal. But because we employ the deferential clearly erroneous standard to the trial court's determination whether an action was frivolous, the trial court's failure to articulate a clear basis for its decision makes it impossible to ascertain whether the trial court clearly erred in finding the motion frivolous. We must vacate and remand for appropriate findings. *Triple E Produce Corp v Mastronardi Produce Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995). The trial court should decide Home-Owners's motion for sanctions, articulating on the record or in a written opinion the basis of its ruling. If the trial court finds a violation of MCR 2.114, it must "impose . . . an appropriate sanction . . . ." MCR 2.114(E). See *Cvengros*, 216 Mich App at 268. The $35.20 costs shall also not be included in any amended order.

Affirmed in part, vacated in part, and remanded for further proceedings. No costs, neither party having prevailed in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher