DONALD Y. KISSIL, PLAINTIFF-APPELLANT, v. BENEFICIAL NATIONAL LIFE INSURANCE CO., A CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-RESPONDENT.

Argued March 4, 1974—Decided May 9, 1974.

*Mr. Donald M. Weitzman* argued the cause for plaintiff (*Messrs. Glucksman & Weitzman,* atorneys).

*Mr. Robert B. Turk* argued the cause for defendant (*Messrs. Cohn and Turk,* attorneys).

The opinion of the Court was delivered by

SULLIVAN, J. Plaintiff, the holder of, and named beneficiary in, a Major Medical Expense Policy issued by defendant, filed suit seeking reimbursement for medical expenses incurred on behalf of his son Matthew, a child born while the policy was in force. Involved were the medical costs of treating Matthew for a condition of cystic fibrosis.

Defendant denied liability. It admitted that its policy insured plaintiff and the covered members of his family against loss resulting from sickness which was defined in the policy as "sickness or disease contracted and commencing after the effective date of this Policy as to the person whose sickness is the basis of claim." It also admitted that under the terms

of the policy a child born to the named insured automatically became a "Covered Member," but only "upon attaining the age of fifteen days." Its contention was that Matthew's cystic fibrosis had been contracted and had commenced at birth or within a few days thereafter, which was prior to the effective date of the policy as to him.

At trial, defendant moved to dismiss plaintiff's case on the ground that coverage did not exist as a matter of law. However, the trial court ruled that a factual issue existed as to when the cystic fibrosis had commenced. The case was submitted to the jury which returned a verdict for plaintiff. Judgment was entered in favor of plaintiff for $3,241.91, the amount of medical expenses to date, with the further provision that plaintiff would be entitled to payment of future medical expenses incurred by reason of Matthew's condition of cystic fibrosis up to the maximum policy limit of $12,500.

On appeal the Appellate Division reversed in an unreported opinion, holding that no factual issue was involved since, on the proofs, reasonable minds could not differ as to the disease having commenced and become manifest within the first fifteen days of the infant's life. It held that defendant's motion to dismiss should have been granted. This Court granted certification. 64 *N. J.* 313 (1973).

Cystic fibrosis is an inherited disease present at birth, although indications of it may not appear immediately. The disease cannot be cured. The only treatment for it is supportive. Its symptoms include lung insufficiency, instability of the pancreatic glands and thick mucous secretions which tend to block various organs of the body.

In the instant case, Matthew was born on June 1, 1969 with a mucous blockage of his intestinal tract which required immediate surgery. His condition was diagnosed as meconium ileus. The condition results from enzyme, mucous gland and pancreatic malfunctions. All of the experts agreed that some degree of correlation exists between meconium ileus and cystic fibrosis. There was testimony

that 10% of all cystic children are born with meconium ileus. Conversely, most, if not all, meconium ileus children develop cystic fibrosis. Defendant's medical expert, Dr. Marano, said that meconium ileus is conclusively pathognomonic (indicative or characteristic) of cystic fibrosis. However, plaintiff's expert, Dr. Schiffman, testified that not all infants born with a condition of meconium ileus become cystic.

In the present case there was an immediate diagnosis of meconium ileus, and surgery had to be performed to relieve the condition. There was also a strong suspicion that the baby had cystic fibrosis and a presumptive diagnosis thereof was made. Enzyme treatment for this condition was attempted but was discontinued after a few days because of an adverse reaction. On June 27 a sweat test was administered to confirm the presumptive diagnosis of cystic fibrosis, but results were inconclusive since the child did not sweat enough.[1] He was discharged from the hospital on July 1, 1969 with a diagnosis of "cystic fibrosis — meconium ileus — pneumonia."

In August 1969, Matthew was brought to the Cystic Fibrosis Clinic at Hackensack Hospital and on August 22 another sweat test was administered, this time with positive results. All of the experts agreed that the August 22 test established that Matthew had cystic fibrosis.

At the present time his cystice fibrosis affects his upper respiratory system. He has a constant runny rose, has difficulty breathing and is required to sleep in a mist tent and take enzymes and other drugs. The record does not indicate when this upper respiratory problem manifested itself, although the July 1, 1969 hospital discharge lists "pneumonia" as part of the diagnosis.

Under the policy, Matthew became a "Covered Member" fifteen days after his birth. The issue is whether his cystic

---

[1]A sweat test, a reliable indicator of cystic fibrosis, measures the body's sodium chloride level. Cystic fibrosis children have a high level of sodium chloride.

fibrosis was a disease "contracted and commencing" after the policy became effective as to him.

The Appellate Division held that the disease in fact manifested itself sufficiently in the first fifteen days of the infant's life so that it could be said without doubt to have then commenced, thereby excluding coverage.

We do not agree that the proofs are that clear. Dr. Sank, who was the attending pediatrician, and who was called as a witness by defendant, testified that his working diagnosis of the infant's condition was meconium ileus. He stated that it was very difficult to say when the cystic fibrosis "commenced," but that there was a presumed diagnosis thereof made at about one or two weeks of age. However, the hospital report covering Matthew's one-month stay makes no mention of cystic fibrosis until near the discharge date.

Dr. Marano, defendant's other medical expert, testified that cystic fibrosis while congenital, and, therefore, present at birth, may not manifest symptoms "until years after birth or may not be recognized until later." However, he said that in Matthew's case the diagnosis of meconium ileus confirmed on the third day of his life, was pathognomonic of cystic fibrosis and amounted to a diagnosis of that disease at that time.

Plaintiff's medical expert was Dr. Schiffman, a pediatrician and specialist in cystic fibrosis, who has had Matthew under treatment since August 1969. He agreed that Matthew has cystic fibrosis and that it was present at birth. However, his opinion was that the disease was not definitely diagnosed until August 22, 1969, when a sweat test was administered with positive results. He said that meconium ileus may not be related to cystic fibrosis although most likely a treating physician finding a condition of meconium ileus would suspect cystic fibrosis. However, he said "there are cases of children with intestinal obstruction, meconium ileus, who are not cystics — who do not have cystic fibrosis." In support of this opinion he referred to a seven-year old patient of his who had meconium ileus at birth, but has had

no symptoms of cystic fibrosis. He noted that the hospital record showed that Matthew was not discharged from the hospital on enzymes (a supportive treatment for cystic fibrosis).

The fact that all medical experts are in agreement that Matthew has cystic fibrosis and that it was present at birth is not dispositive of the case. Defendant admits that symptoms of cystic fibrosis may not appear for years and that in the present case, if the disease did not manifest itself within the first fifteen days of the infant's life, coverage would exist.

The record indicates that while cystic fibrosis is a generalized disease, the symptomotology is variable. *Inter alia,* it may appear as an intestinal condition, an upper respiratory condition or a liver condition. The problem is to recognize the particular condition as a certain manifestation of cystic fibrosis. Dr. Sank and Dr. Marano both testified that Matthew's meconium ileus was a symptom or characteristic sign of cystic fibrosis. Dr. Schiffman, on the other hand, disagreed and said that there are cases of children with meconium ileus who are not cystics, *i. e.,* that meconium ileus may or may not be indicative of cystic fibrosis.

The policy should be read as the ordinary policyholder would understand it. We take the words "contracted and commencing" to mean that coverage would exist where the first positive symptoms of the disease did not manifest themselves with reasonable certainty within the first fifteen days of Matthew's life.

In the light of all of the testimony and the varying inferences that could be drawn therefrom, the issue of whether Matthew's cystic fibrosis commenced within the fifteen-day period during which coverage did not exist as to him, was properly left to the jury. Accordingly, the judgment of the Appellate Division is reversed and the judgment of the trial court in favor of plaintiff is hereby reinstated.

CLIFFORD, J. (dissenting). The policy in question, bearing the caption "Major Medical Expense Policy," undertook to insure the plaintiff and members of his family designated on the application dated November 5, 1968 "against loss resulting from sickness or injury as hereinafter defined and to the extent hereinafter provided." Sickness is defined as "sickness or disease contracted and commencing after the effective date of this Policy as to the person whose sickness is the basis of claim." The effective date of the policy was January 30, 1969. The infant Matthew was born June 1, 1969. He became a "Covered Member" under the policy "upon attaining the age of fifteen days."

The majority points out that "all medical experts are in agreement that Matthew has cystic fibrosis and that it was present at birth * * *" but decides that this does not mean the sickness was "contracted and commencing" before fifteen days of life. It seems to me that a most respectable argument can be made to the effect that if this dread disease was present at birth or, as we are told by one of the experts, even before birth, then assuredly it was contracted and commenced, both, before Matthew attained the age of fifteen days.

This rather compelling and uncomplicated logic derives support from the nature of the affliction at once inherited and congenital. The majority's observation that cystic fibrosis is "an inherited disease present at birth," while technically accurate, disguises the fact that not all inherited ailments are "present at birth." According to defendant's expert witness Dr. Marano (whose particular expertise was in the field of cystic fibrosis) a sickness achieves the characteristic of being "inherited" by virtue of its being "transmitted through the genes of the parents." Asked to define "congenital disease" (the inquiry was made of no other witness) he termed it one which is "present at birth." That distinguishing feature of cystic fibrosis is important in light of plaintiff's attorney's attempt to argue from the clearly imperfect analogy to muscular dystrophy and diabetes, both of

which are inherited but neither of which is congenital and thus not "contracted and commencing" at birth.[1]

But I need not, for purposes of this dissent, go so far as to embrace the proposition that the case may be decided solely on the conceded point that cystic fibrosis was present in this infant at birth. The Court holds that in the present context "contracted and commencing" should be taken to mean that "coverage would exist where the first positive symptoms of the disease did not manifest themselves with reasonable certainty within the first fifteen days of Matthew's life." On the record before us I would hold that in applying that test the evidence is abundant and uncontradicted that "positive symptoms" of cystic fibrosis were manifested with "reasonable certainty" within the first fifteen days; thus, there was no factual issue for the jury's determination. Defendant's motion for judgment at the conclusion of the case should have been granted.

The infant has been afflicted, everyone agrees, with cystic fibrosis since the day he was born, June 1, 1969. The first positive symptoms were alarmingly evident at birth. According to Dr. Sank, the attending pediatrician, the pre-

---

[1] Plaintiff's contentions reveal an apprehension that the carrier might escape liability for loss consequent upon what he classifies as a hereditary ailment, the symptoms of which may not appear for many years. While I think this approach fails to recognize the critical distinction between "congenital" and "hereditary" conditions and inappropriately employs the "diabetes" example, I would also call attention to *N. J. S. A.* 17:38–13.2 (A) (2) in effect at the time this policy was issued, and to *N. J. S. A.* 17B:26–5(b), effective January 1, 1972, and particularly to the following provision in the policy in question, harmonious with the statutory requirement:

"TIME LIMIT ON CERTAIN DEFENSES: * * *(b) No claim for loss incurred after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name of specific description on the date of loss had existed prior to the effective date of coverage of this policy."

sumptive diagnosis at the time of birth was cystic fibrosis.[2] The Overlook Hospital discharge summary of Dr. Panzarino, who performed the surgery to relieve the meconium ileus condition, reveals that even before the operation of June 3, less than seventy-two hours after birth, a "preliminary diagnosis of cystic fibrosis with meconium ileus" was made. Dr. Panzarino's statement attached to the form by which claim was made under the policy in question shows that the "symptoms" of "meconium ileus with intestinal obstruction and cystic fibrosis" first appeared on the date of birth. The discharge summary, a month after birth, included a "final diagnosis" of cystic fibrosis with meconium ileus and midgut volvulus" — this despite the unsuccessful attempt to achieve absolute certainty by way of the sweat test, which was not successfully performed until August 22. The attending pediatrician's letter two weeks thereafter to the family's regular pediatrician indicated the family had been informed that the baby's "problem" in the hospital was "part of cystic fibrosis." There was, in short, a continuum of sickness contracted and commencing prior to the effective date of the policy as applied to Matthew.

The majority's test of "first positive symptoms manifesting themselves with reasonable certainty" assuredly is satisfied by something short of an exclusive and definitive diagnosis confirmed by the sweat test of August 22, the date plaintiff insists the disease was contracted and commenced within the meaning of this policy. The result here should not be made to turn on, nor can a factual dispute touching the ultimate issue be found in, the absence of a definitive diagnosis having been announced within the first fifteen days, nor on the present treating physician's refusal to adopt Dr. Marano's view that meconium ileus is pathognomic of cystic fibrosis (although he nevertheless acknowledged that only a

---

[2]At another point in his testimony Dr. Sank said "there was a presumed diagnosis of cystic fibrosis at about one or two weeks of age" — in any event earlier than the fifteenth day.

"very, very small percentage of patients who have had meconium ileus have not turned out to be "cystic"). The record is clear that within the critical fifteen day period the first positive symptoms of cystic fibrosis were manifested not just with "reasonable certainty" — they were glaringly and frighteningly apparent and supportive treatment was therefore undertaken immediately.

I would affirm the Appellate Division's reversal of the judgment in favor of plaintiff and enter judgment for defendant.

MOUNTAIN, J., joins in this dissenting opinion.

*For reversal*—Chief Justice HUGHES and Justices JACOBS, SULLIVAN and PASHMAN—4.

*For affirmance*—Justices CLIFFORD and MOUNTAIN—2.