**John ERCOLANI and Elaine Ercolani, Appellants in 86–5613,**

v.

**EXCELSIOR INSURANCE COMPANY, Appellant in 86–5629.**

Nos. 86–5613, 86–5629.

United States Court of Appeals, Third Circuit.

Argued Aug. 19, 1987

Decided Oct. 5, 1987.

Michael R. Needle (argued), Philadelphia, Pa., for appellants, cross-appellees, John Ercolani and Elaine Ercolani.

Christopher P. Leise (argued), Michael O. Kassak, Cherry Hill, N.J., White and Williams, of counsel, for appellee, cross-appellant, Excelsior Ins. Co.

Before GIBBONS, Chief Judge, WEIS, Circuit Judge, and KELLY, District Judge [*].

## OPINION OF THE COURT

GIBBONS, Chief Judge:

In this diversity declaratory judgment suit by a policy owner against the issuer of a named peril homeowners' insurance policy, the policyholders, John and Elaine Ercolani, appeal from a judgment in favor of the issuer, Excelsior Insurance Company. The judgment was entered after a bench trial in which the trial court found that the physical loss for which the Ercolanis sought recovery was "a collapse of a building or any part of a building" within a named peril in the policy, but was excluded by the policy's water damage exclusion. We conclude that the trial court's finding of a collapse within the named peril is not clearly erroneous, and is consistent with New Jersey law, but that the court committed legal error in applying the water damage exclusion. Thus we will reverse and remand with a direction to address other Excelsior defenses which the trial court did not address.

### I.

The Ercolanis, in August, 1984, purchased a home in Audobon, New Jersey, and simultaneously purchased a named peril homeowners policy from Excelsior. That policy insured against the "risk of direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following ... b) hidden decay; (c) hidden insect damage...." It did not cover "loss to ... [a] foundation ... unless the loss is a direct result of the collapse of a building," nor did it cover "settling, cracking,

---

[*] Hon. James McGirr Kelly, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

shrinking, bulging or expansion." The policy also provided:

> We do not cover loss resulting directly or indirectly from ...
>
> 3. *Water Damage*, meaning:
>
> a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
>
> b. water which backs up through sewers or drains; or
>
> c. water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

On the evening of January 21, 1985, the Ercolanis heard loud moaning and shrieking noises from the south wall of their home, observed the wall bulge inward, and with the help of a neighbor erected a system of wooden trusses to prevent disintegration of the south foundation wall. Two days later they sent a property loss notice to Excelsior, which denied coverage on the grounds that there was "no peril covering loss caused by termites," and that "there has not been any collapse." The letter also stated, "I would like to point out further that our engineer noted cracks in the mortar and block caused by hydrostatic pressure. Again, there is no peril covering such a loss. Indeed the policy specifically excludes that type of damage." Letter from Audrey Smith, Property Claims Examiner, April 5, 1985. Their diversity declaratory judgment action followed. The parties agree that New Jersey law governs.

## II.

At trial the evidence established that prior to settlement on their home the Ercolanis received a termite inspection report, certifying that there was no evidence of termite infestation or damage, as well as a report from a home inspection and warranty service that the basement stone walls were in overall sound structural condition. In September of 1984, however, the Ercolanis were advised, by an exterminator hired to eliminate an unrelated problem, that the sill plate sitting between the house frame and the south foundation wall had sustained termite damage which might result in structural problems. They engaged an engineer to inspect the sill plate, and he reported on November 21, 1984 that it had been structurally damaged by termites, and that the south basement wall was now structurally unsound and must be replaced immediately. On the evening of January 21, 1985, the weather was extremely cold, causing ground water outside the premises to freeze, and thus expand. John Ercolani heard loud moaning and shrieking noises emanating from the south basement wall, noticed a crack in it, and observed it move and bulge inward. With a neighbor's assistance he quickly erected a system of wooden trusses to bolster the wall and prevent its disintegration.

The district court, referring to the testimony of engineers, found that a collapse had occurred. The court found:

> The structural impairment to the south foundation wall was caused in part by the misalignment of the weight of the frame on the foundation wall of the house due to the termite damage in the wood sill plate that separates the frame from the foundation wall.
>
> The weather on the night of January 21, 1985 was extremely cold. The ground water outside of the house froze and pushed against the south foundation wall. This increase in hydrostatic pressure, when added to normal hydrostatic pressure, significantly contributed to the structural impairment of the wall.

These combined causative factors, the court found, caused a collapse. Noting that complete destruction had been prevented by the erection of wooden trusses, the court observed:

> The "bulging" and "cracking" of the foundation wall reached the point in January 1985 that the wall was no longer capable of supporting the house's superstructure. That condition was not present before that time. Plaintiffs' efforts to prevent total deterioration of the building were merely a reasonable effort to mitigate damages already caused by this serious structural impairment. The

insurance company cannot require a party to wait for complete destruction before [collapse caused by termite damage] coverage will apply.

The court nevertheless held that because freezing ground water also contributed to the collapse, the water damage exclusion applied. Thus judgment was entered in favor of Excelsior.[1]

Excelsior contends that the trial court erred in finding a collapse. The Ercolanis contend that the trial court erred in holding that the water damage exclusion applied to damage caused by freezing ground water.

### III.

■ The district court's finding that the bulging and cracking of the south foundation wall reached the point in January 1985 that the wall was no longer capable of supporting the house's superstructure is amply supported by the testimony. The same is true of the causal connection between that bulging and cracking and the termite damage to the sill. Excelsior contends, however, that even accepting these findings, no collapse occurred within the meaning of the policy. Excelsior advances two arguments in support of that contention: that a covered collapse occurs only if the building is reduced to rubble or rendered uninhabitable; and that the exclusion for "settling, cracking, shrinking, bulging or expansion" governs. The New Jersey Supreme Court has not specifically addressed either issue, and thus we must predict how it would rule.

There is a split of authority in state courts over what constitutes a collapse of a building within the collapse coverage of a casualty insurance policy. *See generally,* Annotation, *What Constitutes "Collapse" of a Building Within Coverage of Property Insurance Policy,* 71 A.L.R.3d 1072 (1976). Some courts have held that the term collapse is unambiguous and means so complete a change in a structure that it loses its distinctive character as a building. *See Higgins v. Conn. Fire Ins. Co.,* 163 Colo. 292, 295, 430 P.2d 479, 480 (1967).

*See also Olmstead v. Lumberman's Mutual Ins. Co.,* 22 Ohio St.2d 212, 259 N.E.2d 123 (1970). Other courts, rejecting an abstract dictionary definition of the term, have defined collapse as "any serious impairment of structural integrity." *Government Employees Ins. Co. v. DeJames,* 256 Md. 717, 724, 261 A.2d 747, 751 (1970). *See also Nationwide Mut. Life Ins. Co. v. Tomlin,* 181 Ga.App. 413, 415, 352 S.E.2d 612, 615 (1986). Courts applying the definition more favorable to the insured generally reason that the term "collapse of a building or any part thereof" is ambiguous, and should be construed in favor of the insured. *E.g. Travelers Fire Ins. Co. v. Whaley,* 272 F.2d 288 (10th Cir.1959) (collapse peril includes sinking, bulging, cracking, pulling away of foundation wall so as to impair its function of supporting superstructure); *Morton v. Travelers Indem. Co.,* 171 Neb. 433, 106 N.W.2d 710 (1960) (collapse peril does not require that structures fall together in irregular mass or flattened form).

■ The Supreme Court of New Jersey has consistently construed insurance policies in favor of the insured, and required resolution of ambiguities in favor of the insured. *E.g., Kievit v. Loyal Protective Life Ins. Co.,* 34 N.J. 475, 482, 170 A.2d 22, 26 (1961). Given this settled policy we must agree with the trial court that the New Jersey courts would, and a diversity court must, read the collapse peril as covering a serious impairment of structural integrity making the wall no longer capable of supporting the house's superstructure.

The courts are divided as well over the meaning of the "settling, cracking, shrinking, bulging" exception. *See generally,* 71 A.L.R.2d at 1096–1104. Some courts have held that this exclusion prevents application of the collapse coverage to mere impairment of structural integrity. *E.g., Krug v. Millers' Ins. Ass'n of Ill.,* 209 Kan. 111, 116–17, 495 P.2d 949, 954 (1972). Others have held that the collapse coverage applies to loss of structural integrity notwithstanding that exception. *E.g. Govern-*

---

1. Because the trial court relied on the water damage exclusion it did not resolve issues of the meaning of "hidden insect damage" and of the sworn proof of loss requirement.

*ment Employees,* 256 Md. at 724, 261 A.2d at 751. As with the meaning of the collapse term, given the rules of construction which New Jersey courts apply to policy language, we agree that the district court properly predicted that those courts would hold the collapse which was found in this case falls outside the exclusion.

Since a loss occurred within the defined collapse peril in the policy, and outside the "settling, cracking" exception, the Ercolanis are entitled to coverage unless another exclusion applies.

### IV.

■ Turning to the Ercolanis' contention that the court erred in applying the water damage exclusion, we address first Excelsior's argument that this ground for appeal was waived because it was not argued to the district court until the plaintiffs made a motion to alter or amend the judgment. For several reasons we reject that argument. First, the contention that expansion from freezing is not water damage was made by the Ercolanis' counsel during closing argument. Thus the trial court was made aware of the Ercolanis' legal position on this issue before rendering its findings of fact and conclusions of law. Moreover, the application of the exclusion is an affirmative defense, not a theory of the Ercolanis' recovery. Thus the burden of establishing facts within the exclusion rested with Excelsior and it could not therefore have been prejudiced by a late assertion of the Ercolanis' legal position. Indeed, although we do not decide the question, it appears that Excelsior may have waived the contention that expansion from freezing constitutes water damage by not raising it until closing argument.

Throughout the trial, Excelsior contended that the collapse was caused by "hydrostatic pressure," and thus fell within exclusion 3(c) as "water which exerts pressure on ... a building." The narrow issue presented is whether the New Jersey courts would read the quoted exclusion to apply not only to water which in its liquid state causes pressure on a building, but also to water which has become solid and expanded due to a reduction in its temperature.[2]

Subsequent to the decision of the trial court that precise issue was presented to a New Jersey court when an insured sued an insurer for damage caused to a warehouse floor by an ice and frost heave. The policy excluded loss caused by, resulting from, contributed to or aggravated by:

> Water below the surface of the ground including that which exerts pressure on or flows, seeps, or leaks through the sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows, or other opening in such sidewalks, driveways, foundations, walls or floors.

The court held that the exclusion did not apply, noting:

> Ice and water ... are not the same thing. It was not water in a natural, liquid state which caused damage to the warehouse; it was ice, creating pressure, which caused damage. The exclusion makes no reference to ice, although it could easily have done so. Further, under the rule of *ejusdem generis,* the water to which the exclusion refers must be water that "flows, seeps, or leaks." The exclusion is dealing with water in liquid form, not frozen water. *Nationwide v. Warren,* 675 S.W.2d 402 (Ky.Ct.App.1984) so held, stating that the exclusion referred to "natural deposits of liquids." *Id.* at 403–404.

*Ariston Airline & Catering Supply Co. v. Forbes,* 211 N.J.Super. 472, 483–84, 511 A.2d 1278, 1285 (Law Div.1986). While *Ariston* is a lower court opinion, its analysis provides guidance in predicting how the New Jersey Supreme Court would construe

**2.** This is a legal question subject to plenary review. *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985). Excelsior's contention that an appeal from a motion under Fed.R. Civ.P. 52(b) is entitled to a more deferential standard of review appears to ignore that a timely appeal from an order denying such a motion brings up the underlying judgment for review. *See* Fed.R.App.P. 4(a)(4)(ii); *Quality Prefabrication, Inc. v. Daniel J. Keating Co.,* 675 F.2d 77, 78 (3d Cir.1982) (Fed.R.Civ.P. 59 motion).

the water damage exclusion in this case. *General Elec. Credit Corp. v. Ger-Beck Mach. Co.*, 806 F.2d 1207, 1209 (3d Cir. 1986); *McGowan v. University of Scranton*, 759 F.2d 287, 291 (3d Cir.1985). Moreover the analysis made in *Ariston* is consistent with the settled New Jersey rule that language of an insurance policy should be read "as the ordinary policy holder would understand it." *Kissil v. Beneficial Nat'l Life Ins. Co.*, 64 N.J. 555, 561, 319 A.2d 67, 70 (1974). The American College Dictionary defines water as "1. The *liquid* which in a more or less impure state constitutes rain, oceans, lakes, rivers, etc., and which in a pure state is a transparent, odorless, tasteless *liquid*, a compound of hydrogen and oxygen, $H_2O$, freezing at 32°F. or 0°C ..." American College Dictionary 1377 (1970) (emphasis added). Applying the water damage exclusion to water in its liquid state and not to its expanded frozen state gives effect, it seems to us, to the "objectively reasonable expectations" of an insured. *Meier v. New Jersey Life Ins. Co.*, 101 N.J. 597, 612, 503 A.2d 862, 869 (1986); *Kievit v. Loyal Protective Life Ins. Co.*, 34 N.J. 475, 482, 170 A.2d 22, 30 (1961). In New Jersey "if the clause in question is one of exclusion or exception, designed to limit protection, a strict construction is applied." *Mazzilli v. Accident & Casualty Ins. Co.*, 35 N.J. 1, 8, 170 A.2d 800, 804 (1961).

We hold, therefore, that the trial court committed legal error in construing the water damage exclusion as applicable to a collapse caused in part by the freezing of ground water which put pressure on the south foundation wall of the Ercolanis' home.

### V.

The trial court did not err factually or legally in holding that there was a collapse within the meaning of the policy, but erred in applying the water damage exclusion. While the court intimated that if the water damage exclusion did not apply the Ercolanis would be entitled to recover, it did not rule finally on all issues raised by Excelsior. Thus a remand for further proceedings is required. Costs will be taxed in favor of the Ercolanis in appeal No. 86–5613 and in appeal No. 86–5629.