# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| HENLOPEN HOTEL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-09-212 PRW |
| | ) | |
| UNITED NATIONAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 10, 2020
Decided: January 10, 2020
Written Decision Issued: January 15, 2020

## ORDER ON PARTIES' MOTIONS TO EXCLUDE EXPERT WITNESSES AND FOR SUMMARY JUDGMENT

*Upon Henlopen Hotel's Motion to Exclude Expert Opinion Testimony,*
**DENIED.**

*Upon Henlopen Hotel's Motion for Partial Summary Judgment,*
**DENIED.**

*Upon United National Insurance's Motion to Exclude Expert Opinion Testimony,*
**DENIED.**

*Upon United National Insurance's Motion for Summary Judgment,*
**GRANTED IN PART, DENIED IN PART.**

This 15th day of January, 2020, upon consideration of the Motion to Exclude the Expert Testimony of Mervin T. Thomas (D.I. 163) filed by United National Insurance Company ("United National") and the response thereto (D.I. 168) filed by Henlopen Hotel, Inc. ("Henlopen Hotel"); Henlopen Hotel's Motion *in Limine* to

exclude testimony from J. Frank Peter (D.I. 171) and United National's response thereto (D.I. 174); Henlopen Hotel's Motion for Partial Summary Judgment (D.I. 122) accompanying brief (D.I. 132) and United National's answering brief thereto (D.I. 170); United National's Motion for Summary Judgment (D.I. 137) accompanying brief (D.I. 138) and Henlopen Hotel's answering brief thereto (D.I. 169); the oral arguments presented by the parties on the various motions, and the complete record in this matter, it appears to the Court that:

(1)     Henlopen Hotel filed this action against its insurer, United National Insurance Company for contract breach and insurance bad-faith[1] following a coverage denial for water damage caused by a ruptured pipe in January 2018. United National denied coverage based on its factual conclusion that the pipe burst due to freezing and its interpretation of Helopen Hotel's policy that, it says, disqualified coverage for such an incident.[2]

(2)     United National supports its conclusion that the pipe burst due to freezing with the expert analysis of J. Frank Peter ("Peter").[3] Henlopen Hotel seeks to admit the testimony of its own expert witness, Mervin T. Thomas ("Thomas"), to rebut this factual conclusion and give support to Henlopen Hotel's alternative

---

[1]     Complaint ¶¶ 16-25 (D.I. 1).

[2]     *Id.* at ex. C.

[3]     *See generally* Def. Resp. to Plf. Mot. (D.I. 168), ex. A. [Hereinafter "Peter Report"].

hypothesis that the pipe failed due to accumulated wear and age.[4]

(3)     In dueling motions to exclude, each party seeks to bar the use of the other's expert alleging his testimony fails to satisfy the admissibility criteria for expert opinion evidence under Delaware's evidence rules.

(4)     In Henlopen Hotel's Motion for Partial Summary Judgment, it seeks the Court's determination that the water damage is covered under the policy based on either of two theories.  Henlopen Hotel's first theory is that its undisputed efforts to keep the pipes heated satisfied the terms of the policy's Heat Requirement Endorsement[5] and therefore make the damage compensable irrespective of whether those efforts successfully prevented freezing.[6]  Alternatively, the hotel argues that United National has failed to produce admissible evidence that freezing occurred and caused the damage.[7]

(5)     In United National's Motion for Summary Judgment, the insurer argues that the Heat Requirement Endorsement creates an *ipso facto* coverage exclusion for frozen pipes,[8] and that the record shows beyond all genuine dispute that the pipe

---

[4]     Def. Mot. (D.I. 163), ex. B [Hereinafter "Thomas Report"].

[5]     Aff. of Herbert W. Mondros, Esq. (D.I. 138), ex. 10.

[6]     Plf. Br. (D.I. 132), at 28.

[7]     *Id.* at 29.

[8]     *See* Def. Br. (D.I. 138), at 28 ("The plain import of the Heat Requirement is this language is [sic] that the Hotel must not only maintain heat, but that it must maintain heat *at a level sufficient*

ruptured due to a freeze.[9] Similarly, United National argues that because the policy unambiguously denies coverage, there was no breach of the covenant of good faith and fair dealing.

(6)     In the alternative, United National argues that even if a triable issue exists as to coverage, the exclusion and factual record demonstrate that United National's behavior shows neither bad faith nor maliciousness and so require entry of summary judgment as to the insurance bad faith count and prayer for punitive damages.[10]

(7)     Summary judgment is governed by Superior Court Civil Rule 56 and in a cross-motion with disputed facts, neither party's motion shall be granted unless the record shows that there is no genuine issue of material fact and one of the parties is entitled to judgment as a matter of law.[11]

## I.     EACH EXPERTS' TESTIMONY IS ADMISSIBLE.

(8)     Delaware Rule of Evidence 702 permits a witness to provide an expert opinion if his or her testimony survives a five-step examination that looks at

---

*to prevent the fire suppression system from freezing.* If the fire suppression system froze, it is manifest that the Hotel failed to satisfy that condition") (italics in original).

[9]     *Id.* at 30-31.

[10]    *Id.* at 34.

[11]    *Laugelle v. Bell Helicopter Textron, Inc.*, 88 A.3d 110, 118 (Del. Super. Ct. 2014).

whether:

        (a)    the witness is qualified as an expert by knowledge, skill, experience, training, or education;

        (b)    the evidence is relevant;

        (c)    the expert's opinion is based upon information reasonably relied upon by experts in the particular field;

        (d)    the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and

        (e)    the expert testimony will not create unfair prejudice or confuse or mislead the jury.[12]

(9) Rule 702 substantially mirrors the corresponding federal rule of evidence[13] and Delaware courts find federal precedent of assistance when making expert admissibility determinations.[14] "The test of reliability is flexible," and it is within the discretion and responsibility of the Court both to devise how to measure reliability as well as to perform that measurement given the specifics and disciplines involved in the given case before it.[15]

(10) When its admission is challenged, a trial judge must ensure that expert

---

[12] *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del. 2006).

[13] *See M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 521 (Del. 1999) ("Delaware Rule of Evidence 702 is identical to its federal counterpart").

[14] *See Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1269 (Del. 2013) ("*Daubert* and its progeny" are "the correct interpretation of Delaware Rule of Evidence 702") (citing *M.G. Bancorporation, Inc.*).

[15] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

testimony is both reliable and relevant.[16] Expert testimony is relevant if it assists the fact finder in "understand[ing] the evidence or . . . determin[ing] a fact in issue."[17] Reliable expert testimony is premised on technical or specialized knowledge, which requires the testimony to be grounded in reliable methods and procedures and "supported by appropriate validation—i.e., 'good grounds,' based on what is known."[18] So, at bottom, the Court's examination of an expert's opinion "must be solely focused on principles and methodology, not on the conclusions they generate."[19]

(11) It is the burden of the party seeking to introduce the expert testimony to establish its admissibility by a preponderance of the evidence.[20] And "[a] strong preference exists" for admitting expert opinions "when they will assist the trier of fact in understanding the relevant facts or the evidence."[21]

---

[16] *Daubert,* 509 U.S. at 597 (1993).

[17] *Id.* at 591 (quoting Fed. R. Evid. 702).

[18] *Id.* at 590.

[19] *Tumlinson,* 81 A.3d at 1270 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (2013)).

[20] *Id.*

[21] *Norman v. All About Women, P.A.,* 193 A.3d 726, 730 (Del. 2018).

(12) The Court notes that a rigid application of the *Daubert* factors[22] simply cannot be engaged to determine testimonial reliability in every field of expertise.[23] For example, many scientific, technical, or specialized fields are not subject to peer review and publication. That is why the test of reliability is "flexible," and the trial court has "broad latitude when it decides how to determine reliability."[24]

### A. Both Experts Possess Education, Training, and Experience.

(13) Thomas obtained an Associate's Degree from Temple University in architectural design and building construction technology in 1971.[25] He has spent the decades since working in various construction-related fields, including as a carpenter, a builder, a zoning officer and building inspector, and a construction supervisor, among other capacities.[26] The professional and practical knowledge and experience Thomas necessarily accrued over the course of that career constitutes the "knowledge, skill, experience, training, or education" necessary to give an expert

---

[22] *Bowen*, 906 A.2d at 795 (outlining the several factors identified in *Daubert* that a trial judge might consider in his or her "gatekeeper"-role when deciding whether an expert's testimony "has a reliable basis in the knowledge and experience of [the relevant] discipline.").

[23] *See, e.g.*, *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 990 (5th Cir. 1997) (noting "[n]ot every guidepost outlined in *Daubert* will necessarily apply to expert testimony based on engineering principles and practical experience").

[24] *Kumho*, 526 U.S. at 141–42.

[25] Def. Mot. (D.I. 163), ex. A..

[26] *Id.*

opinion on matters in the field of construction.[27]

(14) Peter obtained a Bachelor's Degree in Chemical Engineering from the University of Delaware in 1971, and a Master's in the same subject from the University of Pennsylvania in 1974.[28] He has likewise spent decades working in various construction-related fields, including design, safety, crisis management and response, and forensics.[29] Since 2003, he has worked solely in matters associated with building forensics, repair management, and associated legal support, with a focus on the effects of water on buildings.[30] As with Thomas, Peter has the qualifications necessary to form an expert opinion on matters related to construction engineering.

(15) The experts' professional opinions are informed by a synthesis of knowledge and expertise accrued over their long careers. This expertise is fundamentally interdisciplinary, and includes a foundation in physics and chemistry—which certainly have ample peer-reviewed journals—as well as in

---

[27]     D.R.E. 702. United National in its Motion asserts that Thomas "admitted he does not have any scientific, technical, or any other specialized knowledge that will assist the jury in this case to determine the cause of pipe failure," citing to Thomas's deposition. The section of the deposition cited includes only Thomas disclaiming any training or education *as a meteorologist*. Thomas Dep. at 101.

[28]     Peter Report, at 6.

[29]     *Id.*

[30]     *Id.*

observations and practical know-how in construction engineering—which generally evades such formal academic review and commentary. "Many scientific, technical, or specialized fields are not subject to peer review and publication," though they adhere to the characteristics of falsifiability, testability, and iterative refinement characteristic of the scientific method.[31] While mere *ipse dixit* from experience is insufficiently reliable to satisfy Rule 702,[32] that concern is not present where the professional's opinions are founded on data, assumptions, or inferences themselves published in scientific literature or otherwise amenable to examination. When an adverse party can adequately interrogate the bases of an expert's opinion, highlight contrary data, and expose the expert's consideration or lack of consideration of alternative scenarios, falsifiability is satisfied and the circumstances call for rigorous cross-examination rather than gatekeeping exclusion.[33]

## B. The Experts' Opinions Are Relevant.

(16) Evidence is relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

---

[31] *Delaware ex. Rel. French v. Card Compliant, LLC*, 2018 WL 4151288, *2 (Del. Super. Ct. Aug. 29, 2018).

[32] *E.g. Wiercinski v. Brescia Properties, LLC*, 2015 WL 227980, *2-3 (Del. Super. Ct. Jan. 15, 2015) ("[The expert's] theory of dating wood rot is based *solely* on his work experience, and his methodology is not supported by *any* scientific data.") (emphasis added).

[33] *Porter v. Turner*, 954 A.2d 308, 314 (Del. 2008).

less probable than it would be without the evidence."[34] Whether the broken pipe in this case ruptured due to a freeze during the cold snap in late 2017 and early 2018 is a central disputed issue of this case.[35] The experts' opinions directly relate to whether or not such a freeze caused the rupture, and if credited would make that conclusion respectively more or less probable in the mind of the fact finder.

### C. The Experts Use Professionally Reasonable Methods.

(17)   Thomas's first step was to consult with an outside metallurgical lab.[36] When that lab informed him that no metallurgic test could determine with certainty whether a pipe fracture was caused by freezing, he conducted his own investigation based on temperature patterns.[37] To track those temperatures, Thomas used Weather Underground,[38] a credible and recognized source of weather data.[39] He considered

---

[34]    *Garcia v. State*, 2006 WL 3087173, at *2 (Del. Oct. 31, 2006) (quoting D.R.E. 401).

[35]    The alleged freeze is the *sine qua non* for United National's Motion for Summary Judgment (D.I. 137) as discussed in the corresponding brief. (D.I. 138).

[36]    Def. Mot. (D.I. 163), ex. C [Hereinafter "Thomas Dep."] at 64.

[37]    *Id.*

[38]    Weather Underground is owned by The Weather Channel and collects historical weather data from government sources, as well as from private stations, primarily at airports. Thomas Dep. at 89. The service was originally founded at the University of Michigan in Ann Arbor in 1995. John Schwartz and Brian Stetler, *Fans Howl After Weather Site Buys Out Rival*, THE NEW YORK TIMES, July 3, 2012, https://www.nytimes.com/2012/07/04/us/as-weather-channel-buys-weather-underground-fans-fear-change.html (last accessed December 20, 2019). The name was chosen as a "winking reference" to the 1960s violent radical group, which also had roots on that university campus. *Id.*

[39]    *See, e.g., Pyramid Technologies, Inc. v. Hartford Casualty Ins. Co.*, 752 F.3d 807, 815 (9th Cir. 2014); *Bentz v. Butler*, 2017 WL 2081000, at *7 n.7 (S.D. Ill. May 15, 2017); *Cowley v Sunset*

convection in the laundry chute,[40] and the physical appearance and markings on the broken fixture which, based on his experience, resembled accumulated long-term damage rather than a single recent freeze-driven burst event.[41]

(18)   Peter is also not a metallurgist and also consulted with an outside metallurgy lab, though unlike Thomas he obtained a full report.[42]   Peter also reviewed Weather Underground data, though instead of conducting a thorough sweep through four decades of records, Peter limited himself to a "cursory review" of weather data from the 2017-18 winter cold snap in question.[43]   Peter also took into consideration convection effects in the laundry chute.[44]

(19)   The similarity of the experts' methods speaks to their general acceptance in the field.   The experts both consulted with an outside metallurgical lab.   Both experts reviewed temperature data from the same source.   Both considered thermal convection in the laundry chute.   Both more generally seek to diagnose the cause of the pipe failure by eliminating alternative explanations based on

---

*Yacht Charters, Inc.*, 2011 WL 2938463, at *4 (S.D. Fla. July 20, 2011); *Burroughs v. Mackie Moving Systems Corp.*, 2010 WL 1254630, at *7 (E.D. Mo. Mar. 24, 2010).

[40]     Thomas Report, at 1.

[41]     *Id.* 8.

[42]     Peter Report, at 3.

[43]     *Id.* at 9.

[44]     *Id.* at 4.

circumstantial reasoning. The different depth with which they pursued particular lines of investigation and the different assumptions they made are readily subject to cross-examination and to evaluation by the fact finder for credibility and weight.

### D. The Experts Will Assist the Trier of Fact.

(20) The ultimate fact finder, the jury, is presumably familiar with some of the basic ideas underlying the conclusions of both Thomas and Peter. The unusual property of water that it expands when frozen, and hence that ice floats, is universally known.[45] That this expansion exerts pressure on the surrounding container is also common knowledge.[46] The magnitude of forces involved, and other thermodynamic issues present in this case go well beyond this common knowledge, however.[47] So too are each expert's knowledge and application of construction principles related to the location of the water pipe and how that might make freeze a more or less likely cause of its failure. The expert opinions are therefore vital to the fact finder's ability

---

[45] *See Ercolani v. Excelsior Ins. Co.*, 830 F.2d 31, 33 (3rd Cir. 1987) (taking as given that water expands when frozen); *Album Realty Corp. v. American Home Assur. Co.*, 607 N.E.2d 804, 806 (N.Y. 1992) ("[A]ny owner of a home or other property with running water knows . . . water expands when it freezes.") (Titone, J., dissenting); *Ruddy v. Atlantic Mutual Ins. Co.*, 342 N.Y.S.2d 72, 74 (N.Y. App. Div. 1972) (It is a "well-known property of water" that "in the process of. . . freezing at 32 Fahrenheit, it preliminarily expands . . .").

[46] *See Nationwide Ins. Co. v. Warren*, 675 S.W.2d 402, 403 (Ky. Ct. App. 1984) (affirming trial court's finding: "[E]veryone knows, ice is water which is frozen and which expands and exerts pressure.").

[47] For example, the experts' technical discussion of convection effects in the laundry chute. Peter Report ,at 4; Thomas Report, at 1.

to understand and evaluate the plausibility of the parties' competing theories for why the pipe fractured.

### E. Neither Expert Appeals to any Improper Bias.

(21) Evidence appeals to an unfair prejudice when it tends to suggest decision on an improper basis, commonly but not necessarily emotion rather than reason.[48] The fact finder may credit each expert's opinion and analysis, or may not, but there is nothing in the record to suggest either will appeal to or persuade the fact finder on any improper basis. Whatever persuasive power might lie in each expert's opinion does so due to the coherence and power of its content to explain events.

## II.  DISPUTED FACTS PRECLUDE SUMMARY JUDGMENT FOR BREACH.

(22) Each party's summary judgment motion is viewed in a light most favorable to its opponent, accepting the non-movant's version of any disputed facts along with all favorable rational inferences.[49]

(23) United National's coverage denial is based solely on the Heat Requirement Endorsement.[50] Under a light most favorable to Henlopen Hotel, the Court must credit Thomas's opinion that the pipe did not suffer a freeze-related

---

[48]  *See Paikin v. Vigilant Ins. Co.*, 2013 WL 5488454, at *3 n.7 (Del. Super. Ct. Oct. 1, 2013).

[49]  *Solera Holdings, Inc. v. XL Specialty Ins. Co.*, 213 A.3d 1249, 1254 (Del. Super. Ct. 2019).

[50]  Hrg. Tr. (September 16, 2019), at 3 (D.I. 101).

failure.[51] When the Court does so, and should the jury follow, Henlopen Hotel would be found to have satisfied any possible reading of the Heat Requirement Endorsement and is entitled to have the claim paid.

(24) Conversely, on Henlopen Hotel's motion, viewing the record in a light most favorable to United National requires crediting Peter's expert analysis and opinion that the pipe failed because it froze in the cold weather. From that, of course, the fact finder *could* reasonably infer the freeze was caused by Henlopen Hotel's failure to maintain heat in the building as required. And, under such circumstances, the coverage exclusion created by the Heat Requirement Endorsement would apply.

(25) Thus, each of the parties' cross-motions for summary judgment as to Count I (Breach of Contract) must be **DENIED**.

### III. UNITED NATIONAL HAS A *BONA FIDE* BASIS TO DISPUTE LIABILITY.

(26) To establish bad faith, an insured must show that the insurer's refusal to honor its contractual obligation was clearly without any reasonable justification.[52] Where an insurer's denial of coverage is premised on a theory sufficiently well-supported as to resist summary judgment, they are entitled to contest coverage and cannot be subject to an "extra-contractual" claim for bad faith or punitive damages.[53]

---

[51] *See Hart v. Deshong*, 8 A.2d 85, 88 (Del. Super. Ct. 1939) (light most favorable analysis involves adopting and giving credit to that testimony which is most advantageous).

[52] *Enrique v. State Farm Mutual Auto. Ins. Co.*, 142 A.3d 506, 511 (Del. 2016).

[53] *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 368-69 (Del. Super. Ct. 1982).

(27)   United National's refusal to pay has at all times been based on the theory that the damage was caused by Henlopen Hotel's failure to keep the pipes heated and prevent a freeze.[54]  As that theory is sufficiently supported to preclude summary judgment in Henlopen Hotel's favor, United National's motion for summary judgment as to Count II (Bad Faith) should be **GRANTED**.[55]

## IV.   HENLOPEN HOTEL'S GOOD FAITH AND FAIR DEALING CLAIM IS DUPLICATIVE.

(28)   The implied covenant of good faith and fair dealing involves inferring contractual terms to handle developments or contractual gaps that neither party anticipated and which the policy's words do not expressly address.[56]  An express contractual clause dealing with a situation thus precludes application of the implied covenant of good faith and fair dealing.[57]

(29)   In the Complaint, Henlopen Hotel cited United National's nonpayment

---

[54]   *See* Compl., ex. C (United National's initial coverage denial letter, asserting "the fire suppression main pipe burst due to a freeze. . . the policy provisions require that the heat be maintained or the pipes be drained") (D.I. 1).

[55]   *Casson*, 455 A.2d at 369 ("Implicit in th[e Court's] ruling [denying plaintiff's motion for summary judgment because of a material factual dispute requiring a jury determination as to whether or not the insured had complied with a condition precedent for insurance coverage] is a determination that a bona fide dispute existed.").

[56]   *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015).

[57]   *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).

as the sole grounds for breach of the implied covenant.[58] In its brief opposing United National's request for summary judgment, Henlopen Hotel exclusively argues that nonpayment was contrary to Henlopen Hotel's reasonable expectations, and that United National acted arbitrarily and unreasonably in denying payment.[59]

(30) The Heat Requirement Endorsement explicitly deals with whether coverage is available for frozen pipes. Whether that exclusion does or does not apply under these circumstances is addressed by the interpretation of that express clause, rather than the implied covenant.

(31) Likewise, the accusation that United National acted arbitrarily and unreasonably in refusing to compensate Henlopen Hotel is a reiteration of the doomed bad faith count.

## V.    UNITED NATIONAL BEARS THE BURDEN OF SHOWING AN EXCLUSION.

(32) An insured bears the initial burden of showing that a loss is within the coverage provisions of an insurance policy.[60] Once this burden is met, the insurer bears the burden of proof that a policy exclusion applies to the loss.[61]

---

[58]    Compl. ¶¶ 19-23 (D.I. 1).

[59]    Plf. Br. (D.I. 169), at 21-22.

[60]    *Deakyne v. Selective Ins. Co. of Am.*, 728 A.2d 569, 571 (Del. Super. Ct. 1997).

[61]    *National Grange Mut. Ins. Co. v. Elegant Slumming, Inc.*, 59 A.3d 928, 932 n.18 (Del. 2013).

(33)     United National argues that the Heat Requirement Endorsement phrases itself as "a condition of this insurance" and therefore shifts the burden to Henlopen Hotel to prove that the included exceptions do not apply.[62]  The Heat Requirement Endorsement by its terms "modifies insurance provided under. . . ALL COVERAGE PARTS OF THE POLICY."[63]  It defines particular conditions under which specific types of losses that would otherwise be covered under the policy will not be paid.  Despite the unusual phrasing, the Heat Requirement Endorsement unambiguously operates as an exclusion of otherwise-covered losses, not a precondition for the existence of a policy.  Proof of the applicability of this exception thus rests with United National.

(34)     The "cardinal rule of contract construction" is that "where possible, a court should give effect to all contract provisions."[64]  United National's desired reading of the Heat Requirement Endorsement as an *ipso facto* exclusion for frozen pipes cannot be reconciled with the document's plain language.

(35)     The Heat Requirement Endorsement informs Henlopen Hotel that it is "required to maintain heat at a level sufficient in buildings and other structures covered by this policy to prevent freezing of plumbing, heating, air conditioning and

---

[62]     Plf. Br. (D.I. 138), at 24.

[63]     Aff. of Herbert W. Mondros, Esq. (D.I. 138), ex. 10 (emphasis in original).

[64]     *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985).

-17-

fire protection systems."[65] This precludes United National's reading for two reasons.

(36)  First, United National's preferred reading would render "to maintain heat at a level sufficient in buildings and other structures covered by this policy" mere meaningless surplusage.[66]

(37)  Second, the compulsory action the Heat Requirement Endorsement obligates the insured to undertake is *to maintain heat*.  The exclusion is a consequence if the insured "do[es] not comply with this requirement."  The focus of the language of the Heat Requirement Endorsement is at all times with the actions taken by the insured and under its control.  Resting a determination of coverage entirely on whether a freeze occurs—no matter the steps and precautions taken by the insured to prevent such freeze—would likewise negate this operative language rendering it meaningless.

(38)  Under United National's reading, the meaning of the Heat Requirement Endorsement would be unchanged if the entirety of its content were deleted except for "[W]e will not pay for loss or damage caused by or resulting from. . . the plumbing, heating, air conditioning or fire protection systems. . . resulting from freezing."

---

[65]     *Id.*

[66]     *See Heron Bay Property Owners Assc., Inc. v. CooterSunrise, LLC*, 2013 WL 3871432, at *10 (Del. Ch. Jun. 27, 2013) ("Each provision and term should be given effect, where possible, so as not to render a part of the contract mere surplussage.").

-18-

(39)   Whether Henlopen Hotel *maintained heat* is a disputed question of fact. United National can show that the exclusion of the Heat Requirement Endorsement applies and acts to preclude recovery under the policy by showing both that the pipe failed due to a freeze during the relevant cold spell, and that the freeze occurred because Henlopen Hotel failed to adequately maintain heat in the hotel building.

(40)   The mere fact of a freeze might on its own be sufficient to permit a jury to infer that the cause of the freeze was Henlopen Hotel's failure to maintain heat. However, proving a freeze is not *per se* conclusive, as the fact finder could determine that the freeze occurred due to a supervening cause so extreme and unpredictable as to excuse the failure of Henlopen Hotel's efforts to overcome and prevent such an occurrence.[67]

## VI.   CONCLUSION

(41)   Peters and Thomas each satisfy the threshold criteria for expert opinion testimony under Rule 702.  That the experts use somewhat different assumptions and

---

[67]   *See Mountaire Farms, Inc. v. Williams*, 2005 WL 1177569, *5 (Del. Super. Ct. Apr. 25, 2005) (Delaware accepts discharge by supervening impracticability of performance as a defense to breach of contract under certain limited circumstances) (citing Restatement (Second) of Contracts § 261 (1981)); *cf. Truax v. Philadelphia, W. & B.R. Co.*, 8 Del. 233, 245 (Del. Super. Ct. 1866) ("Common carriers are treated, in a certain sense, as insurers. . . they are held responsible for all losses, except those occasioned by inevitable accident, called the act of God. . . [t]he act of God denotes such causes as are beyond the control of the carrier, and produce loss without the intervention of human agency.").

inferences to obtain highly dissimilar results is not at all unusual.[68] Their respective methods are sufficiently rigorous to satisfy the Court's gatekeeping function. Consequently, both parties' cross-motions to exclude the adverse expert must be **DENIED**.

(42)  The experts' disagreement in turn raises a material question as to whether Henlopen Hotel satisfied the terms of the Heat Requirement Endorsement. The fact finder could, crediting one expert or the other, determine that the loss was or was not covered.  As a result, the parties' cross-motions for summary judgment must be **DENIED** as to Count I (Breach of Contract).  Given the record presented to this point and the concessions of the parties it would appear that to prevail at trial United National must demonstrate both that the pipe failed due to a freeze, and that this freeze occurred because Henlopen Hotel failed to maintain adequate heat in the building.

(43)  Because United National's denial of coverage has always been based on the same theory, and because that theory is sufficiently reasonable to survive

---

[68]    *Cf. In re Appraisal of Dole Food Co., Inc.*, 114 A.3d 541, 557 (Del. Ch. 2014) ("Men and women who purport to be applying sound, academically-validated valuation techniques come to this court and, through the neutral application of their expertise to the facts, come to widely disparate results, even when applying the same methodology.  These starkly contrasting presentations have, given the duties required of this court, imposed upon trial judges the responsibility to forge a responsible valuation from what is often ridiculously biased 'expert' input.") (quoting *Finkelstein v. Liberty Digital, Inc.*, 2005 WL 1074364, at *13 (Del. Ch. Apr. 25, 2005)).

summary judgment, United National's motion for summary judgment as to Count III (Bad Faith) is **GRANTED**.

(44)   And since Count II (Breach of the Implied Covenant of Good Faith) relates to an obligation addressed by an express term of the contract, the implied covenant is displaced and United National's motion for summary judgment on that count is **GRANTED**.

**IT IS SO ORDERED** this 15th day of January, 2020.

**Paul R. Wallace, Judge**

Original to Prothonotary

cc:  Counsel via File and Serve